## TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,

v.

## Betty Ruth BROWN, Surviving Wife of Sidney Joseph Brown, Jr., Deceased, Individually and as Next Friend for Christina Brown, Appellee.

No. 7108.

Court of Appeals of Texas, El Paso.

Sept. 23, 1981.

Rehearing Denied Oct. 14, 1981.

Charles E. Anderson, El Paso, for appellant.

Calhoun, Morton, Deason & Preslar, Cliff Preslar, El Paso, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

WARD, Justice.

This is a worker's compensation case where benefits were sought for the death resulting from a heart attack. Trial was to a jury and, upon a favorable verdict, judgment was entered awarding the death benefits. The case was tried on the Plaintiff's contention that mental stress caused by working conditions rather than physical exertion triggered the heart attack. We will reverse and render.

Mr. Sidney Brown had been employed by the telephone company for some twenty-six years, the last thirteen years as a telephone repairman. As a repairman, he would report to his supervisor at 8:00 a. m. and, at that time, he would receive his first assignment or "case of trouble." He would then go to the location where he was directed, complete his job, and finally call the dispatcher for his next assignment. The process would be repeated for the balance of his normal eight-hour working day.

The telephone company had guidelines known as clearing times for the amount of time that an employee should spend on any one case of trouble. At the time of Mr. Brown's death, a satisfactory clearing time was between forty-eight to fifty-two minutes per job. Fifty-four minutes was considered as marginal time and anything longer was unsatisfactory. The telephone repairmen were appraised periodically by

their supervisors and if an employee's work level failed to meet the established standards, the employee would be counselled by his supervisor. Supervisors would consider the average clearing time, the employee's attendance, and the quality of his work at these meetings. In May, 1977, Mr. Brown was counselled on the quantity of his work, as his clearing time had slipped to an unsatisfactory level. In that same month, he was also counselled about his absenteeism. September of 1978, he was again counselled as the quantity of his work and clearing time had again slipped to an unsatisfactory level. Finally in December, 1978, he was placed on a six month's warning due to absenteeism. The December warning expired two months before his death. An appraisal made about five months before Mr. Brown's death indicated that his clearing time had improved to a level considered outstanding by the telephone company.

On Saturday, August 4, 1979, Mr. Brown worked his regular shift and, on one occasion, attempted to repair a subscriber's equipment and found that the problem was in the subscriber's system and not in the telephone company's equipment. He had some difficulty explaining this to the customer and expected that he would receive further complaints. Monday, August 6, he reported to work at 8:00 a. m., and explained his Saturday's difficulty to his supervisor, who stated he would go with Mr. Brown if the customer did complain. Mr. Brown received his first assignment, and completed it without any trouble. His second assignment was found to be the customer who had complained on Saturday. The supervisor accompanied Mr. Brown to the customer's office. The two men inspected the equipment and the supervisor was finally able to explain the problem to the customer and the assignment was then completed. At least an hour and one-half was spent on this particular problem. Mr. Brown's third assignment involved exchanging one telephone for another. Mr. Brown was then found to have died in his truck at 12:00 noon, evidently after having eaten lunch.

No evidence was presented that would indicate that Mr. Brown, while in the course of his employment, engaged in any strenuous physical activity or exertion on the day of his death or on any other days preceding his death. He did not have to climb, push, pull or lift anything particularly heavy and he only carried telephones or telephone parts, weighing about the same as a telephone. As to any physical activity on the date of the death, at his second assignment, the only testimony was that the two men put the covers back on their equipment. At his last assignment, he had to unplug one telephone and put in another.

The medical testimony was presented by the physician who performed the autopsy, and he testified that Mr. Brown had heart disease before his death; that he had an enlarged heart and was a very sick man; and that he died of a heart attack.

Three of the Defendant's Points on this appeal present in different forms no evidence attacks that Brown's injury was sustained in the course of employment, and assert that there was no proof that the heart attack was caused by an undesigned event traceable to a definite time, place or cause. In reviewing the legal sufficiency points, we will consider only the evidence and inferences arising therefrom, which support the jury finding and the Plaintiff's position. It is the Plaintiff's argument that the hour and one-half time spent with the customer on the morning of Mr. Brown's death was the event which produced a stressful situation which caused the heart attack. At the same time, the Plaintiff argues that it was not a mental stress resulting from an anxiety of losing his job, this position being undoubtedly taken in response to those cases holding that heart attacks caused by fear of losing a job are not connected with what a workman has to do in performing his work and thus do not originate in the employer's work, trade, business or profession. *City of Austin v. Johnson,* 525 S.W.2d 220 (Tex.Civ.App.— Beaumont 1975, writ ref'd n. r. e.); *Hayse v. Seaboard Fire and Marine Insurance Company,* 562 S.W.2d 282 (Tex.Civ.App.— Fort Worth 1978, writ ref'd n. r. e.). Re-

**610**

gardless of the argument made and whether or not the stress resulted over the prospect of losing the job, we find no evidence that any of the events of the last two days of the employment in question were in any way stress producing to the deceased. The record is completely blank that Mr. Brown was under any mental stress at all on those two days.

More fatal to the Plaintiff's case is the Plaintiff's frank admission that the heart attack was not precipitated by any physical exertion but that the claim was based entirely on the theory that the conditions of the employment produced a stressful situation which triggered the heart attack. Here the Plaintiff meets head-on the Court made limitation applicable to heart attack cases that generally there must be proof of an actual job-related strain and over-exertion before recovery will be permitted. Thus in *Olson v. Hartford Accident And Indemnity Company*, 477 S.W.2d 859 (Tex. 1972), the Court struck down the attempted recovery where the proof showed only four job-related exasperating instances. The rule was stated that for there to be an accidental injury or industrial accident, there must be an undesigned untoward event, traceable to a definite time, place, and cause. It now appears that the strain or over-exertion involved in heart attack cases need not be an unusual one, if the work involved is generally physically taxing. *Henderson v. The Travelers Insurance Company*, 544 S.W.2d 649 (Tex.1976). Finally, the strain required may be less for one suffering from pre-existing circulatory dysfunction, and the existence of this predisposing bodily infirmity will not preclude recovery so long as the work itself is also a cause of the injury. *Baird v. Texas Employers' Insurance Association*, 495 S.W.2d 207 (Tex.1973); *Continental Insurance Company v. Marshall*, 506 S.W.2d 913 (Tex. Civ.App.—El Paso 1974, no writ). The "strain and exertion" requirement has been adopted by the Supreme Court primarily to insure that the injury of a heart attack is indeed causally related to the work activity of an employee. *Western Casualty & Surety Company v. Dickie*, 609 S.W.2d 874 (Tex.

Civ.App.—Waco 1981, writ ref'd n. r. e.). Granted that mental stress can result in an accidental injury so long as there is an undesigned untoward event that is traceable to a definite time, place, and cause, the facts before us fall far short of those mental stress cases where recovery has been allowed. *See Bailey v. American General Insurance Company*, 154 Tex. 430, 279 S.W.2d 315 (Tex.1955); *Aetna Insurance Company v. Hart*, 315 S.W.2d 169 (Tex.Civ. App.—Houston 1958, writ ref'd n. r. e.); *The Travelers Insurance Company v. Garcia*, 417 S.W.2d 630 (Tex.Civ.App.—El Paso 1967, writ ref'd n. r. e.). The present case is somewhat similar to *Jackson v. Liberty Mutual Insurance Company*, 580 S.W.2d 70 (Tex.Civ.App.—El Paso 1979, writ ref'd n. r. e.) where, in an opinion written by Chief Justice Preslar, this Court affirmed the trial Court's entry of a judgment notwithstanding a verdict in favor of the insurer even though the claimant established that the emotional stress the driver experienced before driving his truck caused the heart attack.

The Three Points under consideration are sustained. The Court does not reach the Fourth Point. The judgment of the trial Court is reversed and it is here rendered that the Plaintiff take nothing.